**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| THEMI GUERRIERO *Guardian Ad Litem of A.G., a minor of six years, et al.,*  Plaintiffs,  v.  SANFORD L.P., *a Division of Newell Rubbermaid, et al.,*  Defendants. | Civ. No. 12-5246 (KM)  **MEMORANDUM OPINION** |

**MCNULTY, U.S.D.J.:**

      The plaintiffs, Themi Guerriero and Angelo Guerriero, filed this action personally and on behalf of their minor child, A.G. The complaint alleges that, on June 13, 2011, A.G. was injured when he poked himself in the eye with the cap of a green Sharpie Altra Fine Marker. Defendants Newell Rubbermaid Inc. and Sanford, L.P. (collectively "Newell") removed the action to this court, invoking diversity jurisdiction over these state-law claims. The Guerrieros filed an Amended Complaint ("AC", ECF no. 12), which Newell answered on November 26, 2013 (ECF no. 14). Now before the court is Newell's motion under Fed. R. Civ. P. 12(c) for judgment on the pleadings (ECF no. 78) seeking to dismiss certain of the claims for failure to state a claim as a matter of New Jersey state law.

      For the reasons stated herein, the motion is granted in part and denied in part.

1

## I. BACKGROUND

The Amended Complaint alleges that on June 13, 2011, A.G., who was six years old, was injured by a Sharpie Ultra Fine Marker. (AC ¶ 2) The defendants, Sanford L.P., Newell Rubbermaid, North Carolina Plastics, Carolina Precision Plastic, LLC, and CPP Global, LLC, allegedly had some unspecified roles in the "design, manufacture, supply, assembly, installation, maintenance, inspection, repair, packaging, distribution, advertising, marketing and/or sale" of the marker. (AC ¶ 1) All of the Complaint's causes of action are pled against them jointly.

According to the motion papers, Newell designed and assembled the marker. The cap, which caused the injury, was manufactured under contract by Carolina Precision Plastics. (Def. Brf., ECF no. 78-3 at 5)

The Complaint contains six counts. They are not labeled and the name of the cause of action is not explicitly stated. As best I can tell, they are as follows:

Count 1 alleges that defendants were negligent and failed to warn plaintiffs.

Count 2 alleges that defendants breached the implied warranty of merchantability and fitness for a particular purpose.

Count 3 alleges that defendants breached express warranties of merchantability and fitness for a particular purpose.

Count 4 alleges that the product had defects that rendered it unreasonably dangerous to users, rendering defendants strictly liable in tort.

Count 5, evidently a demand for punitive damages, alleges that defendants acted recklessly, intentionally, and maliciously with respect to the danger of the product.

Count 6 alleges a claim of "negligence" on behalf of the parents, Themi and Angelo Guerriero, asserting that as a result of A.G.'s injuries they incurred medical expenses on A.G.'s behalf, lost their own wages, and lost the services of A.G.

According to Newell, plaintiffs have "advised" of their intent to pursue claims including the loss of companionship of A.G., destruction of their marriage, and emotional distress.

## II. APPLICABLE STANDARD

A motion for judgment on the pleadings pursuant to Rule 12(c) is often indistinguishable from a motion to dismiss, except that it is made after the filing of a responsive pleading. Federal Rule of Civil Procedure 12(h)(2) "provides that a defense of failure to state a claim upon which relief can be granted may also be made by a motion for judgment on the pleadings." *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991). Accordingly, when a Rule 12(c) motion asserts that the complaint fails to state a claim, the familiar Rule 12(b)(6) standard applies. *Id.*

FED. R. CIV. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a motion to dismiss, a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("reasonable inferences" principle not undermined by later Supreme Court *Twombly* case, *infra*).

FED. R. CIV. P. 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has

"facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' ... it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678 (2009). [1]

## III. DISCUSSION

### A. Posture of the Motion

This motion, a challenge to the claims in the complaint as a matter of law, comes late. Plaintiff errs in saying that the Rule 12(c) motion must be denied "because discovery is ongoing," implying that such a motion should await the "completion of discovery." (Pl. Brf., ECF no. 80 at 7) It is a summary judgment motion, not a Rule 12(c) motion, that ordinarily should be brought at the close of discovery. A Rule 12(c) motion, by contrast, may be brought "[a]fter the pleadings are closed—but early enough not to delay trial...." Fed. R. Civ. P. 12(c). At any rate, it appears that the deadline for fact discovery (but not expert discovery) expired some time ago, as of December 31, 2015. (ECF no. 69)

This motion comes some three years after the filing of the Amended Complaint. For the most part these are matters that could have been asserted in a Rule 12(b)(6) motion to dismiss. The motion promises little in the way of efficiency or of narrowing discovery. Nevertheless, it may be useful in focusing the claims. I therefore consider it.

### B. Claims Subsumed by the PLA

Under New Jersey law, the Products Liability Act (PLA) subsumes other claims. Newell asserts that certain of the counts must therefore be dismissed in favor of a single, PLA-based cause of action.

The PLA "established the sole method to prosecute a product liability action" such that "only a single product liability action remains." *Tirrell v.*

---

[1] Plaintiff cites a state law standard. (ECF no. 80 at 7)(motion to dismiss should be denied "[i]f a generous reading of the allegations merely suggests a cause of action...") It does not apply here in federal court.

*Navistar Int'l, Inc.*, 591 A.2d 643, 647–48 (N.J. Super. Ct. App. Div. 1991). "The language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007). It "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir. 1991).

The PLA subsumes any cause of action "for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J. Stat. Ann. § 2A:58C–1(b)(3). The PLA, however, defines "harm" in a particular way. The PLA's definition of "harm" (quoted above) encompasses resulting harm to property (other than the product itself) as well as harm to the person, including pain and suffering and emotional harm. N.J. Stat. Ann. § 2A:58C-1(b)(2).

The PLA therefore would subsume most claims that a defective product caused "harm" as defined in the PLA. Judge Thompson put it aptly:

> Taken literally, the language of the PLA is broad—so broad in fact, that a literal reading must be discarded. For example, whenever somebody commits a battery with a commercially-made object, the victim suffers "harm caused by a product," but nobody maintains that the PLA has subsumed the tort of battery. It is therefore unsurprising that, when deciding whether or not the PLA has subsumed a particular claim, courts do not simply determine whether or not the victim's injury was literally "caused by a product." Instead, courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action.

*New Hope Pipe Liners, LLC v. Composites One, LCC*, No. CIV. 09-3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009).

Thus a quasi-products liability claim—one that a defective product caused personal injury to the plaintiff, or even consequential damage to the plaintiff's home or property—would properly be brought only under the PLA. *See generally Sinclair v. Merck & Co., Inc.*, 948 A.2d 587, 596 (N.J. 2008) ("The

heart of plaintiffs' case is the potential for harm caused by Merck's drug. It is obviously a product liability claim."); *Clements v. Sanofi-Aventis, U.S., Inc.*, 111 F. Supp. 3d 586, 597 n.5 (D.N.J. June 11, 2015); *Schraeder v. Demilec (USA) LLC*, 2013 WL 3654093 (D.N.J. July 12, 2013); *Baily v. Wyeth, Inc.*, 37 A.3d 549, 581 (N.J. Super. Ct. Law Div. 2008). On the other hand, when the "essential nature" of the claim is not that of a PLA claim, "the plaintiff may maintain a separate cause of action." *New Hope Pipe Liners, supra.*

Count 1 asserts a claim of negligence; Count 2, breach of implied warranties; and Count 4, strict liability in tort. The resulting harm in each case consists primarily of the physical injury to A.G., pain and suffering, and the resulting expenses. These are classic products liability claims. They are subsumed by the PLA.

Consequently, the motion for judgment on the pleadings is granted to the extent that Counts 1, 2, and 4 are dismissed in their current form, and will be deemed to be replaced by a single claim of liability under the Products Liability Act. Plaintiffs are directed to amend their complaint accordingly.

### B. Claims for Loss of Society and Companionship

Newell says that plaintiffs have "advised" that they intend to pursue a claim for loss of A.G.'s society and companionship, and for "destruction" of their marital relationship. Such damages, according to Newell, are not available as a matter of New Jersey law.

It is impossible to glean from the complaint that plaintiffs are suing to recover damages for the loss of A.G.'s society and companionship. Such a claim would be highly problematic. *Tynan v. Curzi*, 753 A.2d 187 (N.J. Super. App. Div. 2000) (recognizing parent's cause of action for loss of minor child's services, earnings, and medical expenditure, but declining to extend it to an adult unemancipated child); *McDonald v. Lederle Laboratories*, 366 N.J. Super. 555, 561-62 (App. Div. 2004) (affirming summary judgment dismissing parent's *per quod* claim for loss of companionship and society of injured child, but remanding for trial of claim of loss of child's services); *H.T. v. E. Windsor Reg'l*

6

*Sch. Dist.*, 2006 U.S. Dist. LEXIS 80821 at *10 (D.N.J. Nov. 3, 2006) ("parents' per quod damages resulting from negligent injuries to a minor child are limited to loss of services, earnings, and medical expenditures, and do not include loss of companionship and society").

It is equally unclear from the complaint that plaintiffs are suing for damages for loss of consortium in their marriage as a result of injury to their child. If so, this would appear to carry the theory rejected by *Tynan* a step farther.

Plaintiffs may move before the Magistrate Judge to amend their complaint to assert such claims. The Magistrate Judge will determine, in the first instance, whether defendants have been prejudiced by the delay, and whether amendment would be futile.

At present, I do not regard such claims as having been properly pled, and they cannot be inserted into the case by means of language in a brief. For the present, this motion, although directed at the complaint, does not call for dismissing or striking anything that is in the complaint. I will not entertain a motion to dismiss things of which the defendant has been "advised."

### C.  Emotional distress

Newell alleges that the claim of negligent infliction of emotional distress (NIED) must be dismissed as a matter of law. I see no such claim in the complaint. The count that comes closest, Count 6, merely alleges that as a result of "negligence," the parents have lost their own wages while caring for the child, that they have incurred medical expenses on behalf of the child, and that they have lost the services of the child.

If the plaintiffs wish to assert a NIED claim—and their brief suggests that they might—they must move to amend. The Magistrate Judge will determine, in the first instance, whether defendants have been prejudiced by the delay, and whether amendment would be futile.

For the parties' guidance, I state that a NIED claim requires that "(a) defendant owed a duty of reasonable care to plaintiff; (b) defendant breached that duty; (c) plaintiff suffered severe emotional distress; and (d) defendant's

7

breach of duty was the proximate cause of the injury." *Dello Russo v. Nagel*, 817 A.2d 426, 435 (App. Div. 2003). Most NIED cases have required a demonstration of physical injury to corroborate plaintiff's claims of emotional harm. The cases have made an exception for the kind of shocking conduct—apprehension of immediate personal injury to plaintiff, witnessing severe injury to a close relative, mishandling of a corpse—that indisputably would cause severe distress. *Portee v. Jafee*, 417 A.2d 521 (N.J. 1980), for example, authorized a NIED claim under the following conditions: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting severe emotional distress." *Id.* at 528. Newell preemptively argues that the parent here did not witness the injury to their child at the scene of the accident. From the complaint, it is impossible to tell.

## IV. CONCLUSION

Accordingly, the motion of Newell for judgment on the pleadings is granted in part and denied in part. An appropriate order accompanies this Opinion.

Dated: August 2, 2016

_____
HON. KEVIN MCNULTY, U.S.D.J.